IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10341
_____


UNITED STATES OF AMERICA,

                                   Plaintiff-Appellee,

        v.

CHRISPUS DARIUS TAYLOR, JR,

                                   Defendant-Appellant.

_____

            Appeal from the United States District Court
                for the Northern District of Texas
                       (7:97-CR-11-1-X)
_____

                       February 22, 1999

Before KING, Chief Judge, REAVLEY and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

        Chrispus Taylor pleaded guilty to sexually abusing a

minor in violation of 18 U.S.C. § 2243.  The district judge

initially calculated the appropriate sentence under the United

States Sentencing Guidelines to be between twelve and eighteen

months' imprisonment, and then, based on evidence of prior

similar sexual predatory behavior by Taylor, granted the

government's motion for an upward departure and sentenced Taylor

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to a 120-month term.  Taylor appeals his sentence, arguing that the district court abused its discretion in departing under the guidelines and that the degree to which the district court departed was unreasonable.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Chrispus Taylor, a twenty-three-year-old male, was indicted on June 24, 1997, for engaging in a sexual act with a thirteen-year-old (N.N.) within the boundaries of Sheppard Air Force Base in violation of 18 U.S.C. § 2243(a).  Taylor pleaded guilty to the indictment.

At the guilty-plea hearing, Taylor agreed that the facts set forth in the indictment and in the factual resume were true and correct.  The factual resume stated that Taylor was a friend of N.N.'s family, that he had spent the night at their house, and that, while other family members were sleeping, he had entered N.N.'s bedroom, woke her, and had sex with N.N.  According to the factual resume, N.N. was responsive to Taylor's sexual advances and "never told [Taylor] to stop."  The resume also stated that, as a result of the sexual intercourse, N.N. became pregnant.  At the sentencing hearing, N.N. testified that she had not consented to having sex with Taylor, but had been too scared to scream or tell him to stop.

The pre-sentencing report (PSR) prepared by the probation office in preparation for Taylor's sentencing assessed a base offense level of twenty-seven on the basis that the offense involved criminal sexual abuse, i.e., that the sex resulted from

2

the threat of force.  See U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇꜱ Mᴀɴᴜᴀʟ § 2A3.2(c)(1).  After hearing testimony from N.N., Taylor, and N.N.'s mother, the district court found that the record did not support application of § 2A3.2(c)(1) and instead assessed a base offense level of fifteen pursuant to § 2A3.2(a).  The court then granted a two-level reduction for acceptance of responsibility, resulting in a total offense level of thirteen.  Based on Taylor's criminal history category of I, the district court noted that the appropriate sentencing range under the guidelines was between twelve and eighteen months' imprisonment.

The district judge then considered whether to grant the government's motion for an upward departure.  The government argued that the court should depart upward under § 4A1.3 because the applicable sentence under the guidelines did not adequately reflect the seriousness of Taylor's past criminal conduct or the likelihood that he would commit other crimes, and that the court should impose the statutory maximum sentence of fifteen years.

Both the PSR and the testimony at the sentencing hearing revealed numerous instances of allegations of past sexual assaults by Taylor.  According to the PSR, Taylor's criminal history began in 1990, when he was fourteen years old.  Taylor, whose father was in the Air Force, was babysitting the four-year-old daughter of a noncommissioned officer at the Charleston, South Carolina Air Force Base.  The child reported that Taylor placed his penis in her mouth, vagina, and rectal area.  Taylor

3

admitted the offense to a psychiatrist, was placed on probation, and was assessed one criminal history point.

The PSR also detailed an allegation that Taylor committed another sexual assault in Charleston three years later. According to the PSR, which cites Air Force Base Security Squadron reports, the victim in that case revealed that she heard noises outside the back of her house, and that she went outside with a kitchen knife to see what had caused the noise. She then saw Taylor, with whom she had been friends for about a year, standing in her backyard. Upon seeing Taylor, the PSR states that she put her knife down and they sat on a picnic table and began talking. After talking for a while, Taylor allegedly picked up the knife and "told her he was going to kill her if she did not do what he said." The PSR recounts that Taylor then grabbed the woman, dragged her into her house, and continued to threaten her with the knife. The woman stated that Taylor then started pulling off her shorts and underwear, and that, as she continued to struggle and yell for help, he laid on top of her. After several attempts to restrain the victim and put on a condom, Taylor allegedly fled the residence. Taylor was charged with assault with intent to commit sexual conduct, but the victim later refused to press charges.

The prosecution, during the sentencing hearing, elicited testimony concerning another instance of sexual predation by Taylor detailed in the PSR. During the hearing, a sixteen-year-old girl testified concerning a pending charge of rape and

4

aggravated burglary against Taylor. The alleged attack occurred in 1997 in Garden City, Kansas, where Taylor attended junior college. The girl testified that, when she was fifteen years old, she had gone to a party at an ex-boyfriend's house, at which she had talked to Taylor and drank heavily. She stated that she was visibly drunk when she left the party, that she drove home, and that, upon arriving home, she passed out in her bed. She then told the court that the next event she remembered was a light coming on in her room and Taylor pulling his penis out of her vagina and leaving the room. She testified that she had not consented to sex with Taylor, and that she could not have consented because she "was passed out" and did not "even remember [the sex] happening until he was getting off me."

The district judge granted the government's motion to depart upward based on the evidence of Taylor's criminal history. The district judge stated in the written judgment that:

> USSG Section 4A1.3 (Adequacy of Criminal History Category) states that if reliable information indicates that the Criminal History Category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. The defendant's prior conviction is similar conduct to the instant offense. However, in that case, the victim was 4 years old and the defendant was 13 years old. Yet, due to his juvenile status, he received a one year probation sentence. This resulted in a Criminal History Category of I. Pursuant to the commentary of USSG Section 4A1.3(e), the Court may consider prior similar adult criminal conduct not resulting in a criminal conviction as a reason for departure. In view of the aforementioned, this policy statement authorizes the consideration of a departure from the established guideline range. Thus, the Court [departs] upward to a

5

Total Offense Level of 24, and a Criminal History Category of VI.

The court then granted the government's motion for an upward departure and sentenced Taylor to a term of 120 months of imprisonment and three years of supervised release.

## II. DISCUSSION

Taylor argues on appeal that the district court erred in departing upward from the guidelines in determining his sentence. A district court's decision to depart from the guidelines is reviewed for abuse of discretion. See Koon v. United States, 518 U.S. 81, 91 (1996); United States v. Wells, 101 F.3d 370, 372 (5th Cir. 1996). A departure will be affirmed on appeal if (1) the district court gives acceptable reasons for departing and (2) the extent of the departure is reasonable. See United States v. Route, 104 F.3d 59, 64 (5th Cir.), cert. denied, 117 S. Ct. 2491 (1997).

A district court may depart upward from the guidelines if the court finds that an aggravating circumstance exists that was not adequately taken into consideration by the Sentencing Commission. See 18 U.S.C. § 3553(b). The district court based its upward departure on the extensive evidence presented in the PSR and at the sentencing hearing of Taylor's prior criminal conduct, finding that "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S. SENTENCING GUIDELINES MANUAL § 4A1.3. A district court's finding that

6

"a defendant's criminal history category does not adequately reflect the seriousness of a defendant's past criminal conduct is a factor <u>not</u> taken into account by the Guidelines and is a permissible justification for upward departure." <u>United States v. Laury</u>, 985 F.2d 1293, 1310 (5th Cir. 1993) (internal quotation marks omitted); <u>see also</u> <u>Koon</u>, 518 U.S. at 96 (stating that when sentencing guidelines encourage departure based on special factor, "the court is authorized to depart if the applicable Guideline does not already take [the special factor] into account").

We review the district court's factual determination that Taylor's criminal history category did not adequately reflect the seriousness of his past criminal conduct for clear error. <u>See</u> <u>Laury</u>, 985 F.2d at 1310. The district judge explicitly considered several prior instances in which Taylor had been accused of, was prosecuted for, or was found guilty of, sexual crimes against vulnerable young women and girls. Based on Taylor's extensive criminal past, and the fact that his criminal history category as computed under the guidelines was I, we have no trouble concluding that the district judge had adequate justification for finding that Taylor's criminal history category, as recommended by the guidelines, did not reflect his criminal past.

Taylor also argues that the district court failed to follow the procedural requirements for an upward departure as set forth

in <u>United States v. Lambert</u>, 984 F.2d 658 (5th Cir. 1993) (en banc).

When departing on the basis of § 4A1.3, "the district court should consider each intermediate criminal history category before arriving at the sentence it settles upon; indeed, the court should state for the record that it has considered each intermediate adjustment." <u>Id.</u> at 662. However, we do not require the district court to explicitly and mechanically consider each intermediate criminal history category it rejects; as we stated in <u>Lambert</u>, "[o]rdinarily the district court's reasons for rejecting intermediate categories will clearly be implicit, if not explicit, in the court's explanation for its departure . . . and its explanation for the category it has chosen as appropriate." <u>Id.</u> at 663.

After reviewing the record, in particular the transcript of the sentencing hearing and the written judgment, it is clear that the district court complied with the procedural requirements this court outlined in <u>Lambert</u>. The judge stated explicitly during the hearing that he departed upward to a 120-month sentence "after having considered incrementally all points in between." In addition, the district judge explained at length his decision to depart as based on his concern that Taylor's criminal history category did not accurately reflect his extensive criminal past. The justification offered by the district court thus clearly indicates why the sentencing range recommended by the guidelines was inappropriate and why the court found the sentence actually

imposed to be appropriate.  See United States v. Ashburn, 38 F.3d 803, 809 (5th Cir. 1994) (en banc) (stating that district court's failure to expressly examine each intervening criminal history category was not dispositive because "it [was] evident from the stated grounds for departure why the bypassed criminal history categories were inadequate").

Lastly, Taylor argues that the extent to which the district court departed from the guidelines was unreasonable.  He points out that the district court increased his sentence by 102 months; the guidelines recommended a sentence of between twelve and eighteen months' imprisonment and the district court imposed a 120-month term.  We conclude that this departure was not unreasonable in light of the extensive evidence concerning Taylor's continuing pattern of sexually predatory conduct that was not considered in the criminal history calculation.  See United States v. Daughenbaugh, 49 F.3d 171, 175 (5th Cir. 1995) (stating that district court's upward departure of 169 months was not extensive given defendant's "unusually violent propensities"); Ashburn, 38 F.3d at 810 (stating that upward departure of 108 months was reasonable based on evidence of numerous instances of past criminal conduct not considered in criminal history calculation).  We also note that the sentence imposed by the district court was five years less than the statutory maximum for Taylor's offense.  See 18 U.S.C. § 2243(a) (setting forth statutory maximum of fifteen years' imprisonment); Daughenbaugh, 49 F.3d at 175.

9

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.